■ LIDIA HUGHES, Respondent, v ANDRE HUGHES, Appellant.
[912 NYS2d 206]—

Judgment of divorce, Supreme Court, Bronx County (Ellen Gesmer, J.), entered May 8, 2009, which, to the extent appealed as limited by defendant's brief, (1) ordered him to (a) pay plaintiff maintenance of $1100 per month for 24 months, followed by $500 per month for 24 months, (b) pay child support of $619.21 per month for 24 months, followed by $721 per month for 24 months, followed by $806.21 per month, (c) pay 69% of the child's unreimbursed health, medical, pharmaceutical, optical, orthodontic, dental, therapy, child care, and camp costs, (d) obtain life insurance with a benefit of at least $500,000 naming plaintiff as beneficiary, and (e) pay plaintiff $17,847.50 as her distributive share of the parties' financial accounts, (2) awarded plaintiff 50% of defendant's pension, including pre- and post-retirement survivor benefits, (3) gave defendant a credit of $45 as his distributive share of plaintiff's Banco Popular account in the Dominican Republic, (4) awarded plaintiff property in San Francisco de Macoris in the Dominican Republic, (5) ordered the marital property to be distributed as set forth in the court's orders dated April 17, 2008 and January 22, 2009, and (6) granted plaintiff an order of protection against defendant for five years, unanimously modified, on the law and the facts, to reduce defendant's child support obligation to $544.62 per month for the first 24 months, $648.91 per month for the second 24 months, and $730.02 per month thereafter, to reduce defendant's share of unreimbursed expenses to 47% during the first 24 months, 56% during the second 24 months, and 63% thereafter, to reduce the amount of life insurance that defendant is required to maintain to $200,000, to reduce the distributive award to $15,584.97, and to award defendant an equitable share of plaintiff's pension, and otherwise affirmed, without costs.

The trial court denied defendant's request for an equitable share of plaintiff's pension because he failed to prove that she had vested rights in a pension plan as of the date this divorce action was commenced. However, "nonvested pensions are subject to equitable distribution" (*Burns v Burns*, 84 NY2d 369, 376 [1994]). Since both parties have New York City pensions, we modify the judgment to add the following paragraph, which is modeled on the paragraph distributing defendant's pension: "The Defendant shall be entitled to and shall be paid a share of

the total account balance of the Plaintiff under the pension plan of the New York City Employees' Retirement System equal to fifty percent of the total account balance multiplied by a fraction, the numerator of which shall be the number of years (or fraction thereof) of the marriage of the Plaintiff and the Defendant during which Plaintiff participated in the pension plan, and the denominator of which shall be the number of years of employment by New York City of the Plaintiff pursuant to *Majauskas v Majauskas*, 61 NY2d 481 (1984), plus all increases to such amount from the date of commencement to the date of distribution.''

Defendant correctly contends that, in distributing the parties' assets, the court erred by using the Ameritrade statement for the period 8/27/05-9/30/05 instead of the one for the period 11/26/05-12/30/05. ''The valuation date or dates may be anytime *from the date of commencement of the action* to the date of trial'' (Domestic Relations Law § 236 [B] [4] [b] [emphasis added]). This action was commenced on December 29, 2005.

It is true that, in distributing the parties' assets, the court may consider ''any transfer . . . made in contemplation of a matrimonial action without fair consideration'' (Domestic Relations Law § 236 [B] [5] [d] [13]). However, the parties did not separate until December 1, 2005, and the court found there was no reason to believe that defendant knew that plaintiff intended to start the divorce action. Therefore, it was internally inconsistent for the court to conclude that transfers back to October 1, 2005 were in contemplation of this action.

Looking only at the period from December 1, 2005, we find withdrawals from the Ameritrade account of $12,610.24 on December 7 and $19.05 on December 20. Both amounts went to the parties' MCU account, from which there are payments to American Express of $125 on December 20 and $206 on December 22. Therefore, defendant owes a credit to plaintiff of $6,149.14 on the Ameritrade account: withdrawals of $12,629.29, minus payments of marital debt of $331, then divide the result by two.

The balance in one of defendant's Banco Popular accounts was $780.78 as of December 31, 2005, and the balance in his other Banco Popular account was $148.42 as of December 16, 2005. Defendant withdrew $16,000 from one of those accounts on December 9, 2005, and he failed to prove that he used that money to pay marital debt. Therefore, plaintiff is entitled to a credit of $8,464.60 (half of $16,929.20) on defendant's Banco Popular accounts.

On December 6, 2005, defendant wrote a $17,000 check on

his NetValue account. However, he later stopped payment on that check. Therefore, plaintiff is entitled to a credit of $8500 (half of $17,000) on the NetValue account.

Contrary to defendant's claim, the remaining marital credit card debt is not $26,000; he incorrectly includes a $5,000 breach of contract claim and an education loan. According to the documents in the record, the remaining marital credit card debt was $15,057.54.

During the trial, the court said it would divide the parties' marital credit card debt, but it failed to do so in either of its orders or in the judgment. The court also said it would divide the parties' property equally. Therefore, $7,528.77 (half of $15,057.54) should be subtracted from the amount that defendant owes plaintiff (*see e.g. McKeever v McKeever*, 8 AD3d 702 [2004]; *Nielsen v Nielsen*, 256 AD2d 1173 [1998]).

To summarize, defendant owes plaintiff $6,149.14 plus $8,464.60 plus $8,500 minus $7,528.77, for a total of $15,584.97.

As noted in one of the cases cited by defendant, "The amount and duration of maintenance are left mainly to the trial court's discretion, as long as the court considers the statutory factors and sets forth bases for its conclusions" (*Carman v Carman*, 22 AD3d 1004, 1008 [2005]). Defendant's contention that plaintiff was not emotionally supportive during the marriage depends on statements made in his post-trial affidavit that the trial court was free to disbelieve. (The court found plaintiff more credible than defendant.) As for defendant's argument that he will become a public charge if he has to pay maintenance in the amount set by the trial court, his income will be above the self-support reserve even after paying maintenance, as will be shown when calculating his income for child support purposes, infra.

As relevant to the instant case, income for the purpose of child support is defined as gross income as it should have been reported on the most recent federal tax return, minus New York City and FICA taxes and maintenance (*see* Domestic Relations Law § 240 [1-b] [b] [5]). The court's order setting maintenance is dated April 17, 2008. Therefore, the most recent tax return would be for 2007. The record does not contain defendant's tax return for 2007, but it does contain his W-2 for that year. It shows his gross income as $58,572.34, his Social Security withholding as $3,962.65, his Medicare withholding as $926.75, and his New York City taxes as $2,115.16. Thus, his annual income for child support purposes is $51,567.78 ($58,572.34 minus $7,004.56) before maintenance. His annual maintenance obligation for the first 24 months ($1,100 per month x 12) is $13,200. This brings defendant's income down to $38,367.78. According

to defendant, the self-support reserve is $14,040. Even after paying maintenance, defendant's income is above the self-support reserve.

Plaintiff's income for the first 24 months is $43,428.14 (gross pay of $33,531.15, plus maintenance of $13,200, minus Social Security withholding of $2031.51, Medicare withholding of $475.12, and New York City tax of $796.38). Thus, the combined parental income is $81,795.92. The child support percentage for one child is 17% (Domestic Relations Law § 240 [1-b] [b] [3] [i]).

As of the date of the order setting the child support award (January 22, 2009), the Child Support Standards Act (CSSA) cap was $80,000 (*see* Domestic Relations Law § 240 [1-b] [c] [2]). A distributive award may be considered for amounts over the CSSA cap (*see Holterman v Holterman*, 3 NY3d 1, 14 [2004]). However, since the amount exceeding the CSSA cap in the instant case ($1,795.90) is not substantial, the trial court properly applied the CSSA percentage to all of the combined parental income.

Seventeen percent of $81,795.92 is $13,905.30. Defendant's share of the combined parental income is 47%. Therefore, defendant's share of child support is $6,535.49 per year (47% of $13,905.30), or $544.62 per month, during the time that his maintenance obligation is $1,100 per month.

When defendant's maintenance obligation decreases to $500 per month, his child support income becomes $45,567.78 ($51,567.78 minus $6,000), and plaintiff's becomes $36,228.14 (gross pay of $33,531.15, plus maintenance of $6,000, minus withholdings of $3,303.01). The combined parental income is still $81,795.92, but now defendant's share is 56%. Therefore, defendant's child support obligation is $7,786.96 per year (56% of $13,905.30), or $648.91 per month.

After defendant stops paying maintenance, his child support income will be $51,567.78, and plaintiff's will be $30,228.14. Defendant's share of the combined parental income will be 63%. Therefore, his child support obligation will be $8,760.33 per year, or $730.02 per month.

Add-on expenses such as child care and unreimbursed medical expenses are to be prorated in the same proportion as each parent's income is to the combined parental income (*see* Domestic Relations Law § 240 [1-b] [c] [4], [5] [v]). Therefore, defendant's obligation for unreimbursed costs is reduced from 69% to 47% during the first 24 months, 56% during the second 24 months, and 63% thereafter.

It appears that the trial court ordered defendant to obtain a

$500,000 life insurance policy to secure his maintenance and child support obligations. However, his obligations will not reach that sum. His maintenance obligations total $38,400 ([$1100 x 24] + [$500 x 24]). His child support obligations total $91,427.25 ([$6,535.49 per year for two years] + [$7,786.96 per year for two years] + [$8,760.33 per year for seven years and two months]). (The parties' child was born on July 23, 1999.) Even if one adds defendant's share of unreimbursed expenses, $500,000 is excessive; we reduce that amount to $200,000.

Some of defendant's remaining arguments are unpreserved, and we decline to consider them in the interest of justice. With respect to defendant's preserved arguments, we find them unavailing. Concur—Tom, J.P., Andrias, Sweeny, DeGrasse and Román, JJ.