OPINION OF THE COURT
Paul I. Marx, J.
It is ordered that defendant’s motion for pendente lite relief and interim counsel fees is disposed of as follows.
Background
The parties were married on June 6, 1998. There are three children of the marriage: Z, born in 1999; Y, born in 2001; and M, born in 2005. The parties and their children reside in the marital residence in Yonkers, New York. Plaintiff is currently living in Toronto, Canada, where he has been working on a church renovation project for the past 10 months.
Plaintiff is a 62-year-old architect who is a renowned church and cathedral restoration artist and an expert in the design, renovation and decoration of old and new churches and cathedrals. He manufactures, restores and installs religious art, including stained glass windows, mosaics, icons and iconostasis, nationally and internationally. He provides these services through EA & D, Ltd., a corporation he formed in January 2006. He claims to have earned $100,000 in 2014, but filed for an extension instead of submitting a tax return for that year.
Defendant is 53 years old. She is currently employed as a nurse’s assistant at a hospital in Yonkers. She states in her statement of net worth that she is a “[n]eurologist from Ukraine” (order to show cause, exhibit C, amended statement of net worth), but has not worked in that capacity in the United States. In 2014, she reported gross income of $30,326 on her individual tax return on which she claimed all three of the parties’ children as dependents.
The parties met in 1995 when plaintiff, then a widower, brought defendant from Ukraine to work as a nanny for his four young children, who ranged in age at the time from 5 to 11 years old. Those children are now all adults.
Plaintiff’s father, B.M., was an ecclesiastical artist who helped train plaintiff in ecclesiastical art. The elder M. did *720 business under his own name until he and plaintiff established M. Studios, Inc. in 1976 and performed their work under that business. (Aff of S.M. ¶ 5.) M. Studios operated out of a building located in Yonkers, New York, which was owned by B. until 2002 when he transferred it to M. Studios.
In 2006, plaintiff established EA & D, Ltd., which he characterizes as merely effecting a change in the name of the business. (Id. ¶ 9.) Plaintiff avers that the only reason for changing the name of the business was his “personal dislike of the eponymous business name and desire for better marketing in the internet age.” (Id.) He also avers that he and his father “continued the same work, in the same studio, with the same clients and employees under the new business name” (id. ¶ 9), claiming that M. Studios “was largely defunct” except for its ownership of the studio. He offers no evidence to substantiate his assertions.
Plaintiff asserts that he and B. continued to work together until B. died in 2008. (Id. ¶ 11.) Upon B.’s death, plaintiff inherited his 50% share of M. Studios, making plaintiff, in effect, the sole owner of the Gold Street property. (Id.) In 2012, plaintiff transferred Gold Street to a newly formed entity entitled Gold Street Family Partnership, which is equally owned by his seven children. (Id. ¶ 14.) Plaintiff retained a 2% interest in the property.
Like his father, plaintiff brought the children from his first marriage, in particular his daughter R., to work in the business and trained them in ecclesiastical design and restoration. R. attended Lehigh University, where she majored in architecture and English literature, with the intention to work in the family business. Throughout her college years, she and her brothers worked with plaintiff on restoration projects in various churches. In 2011, R. enrolled in a three-year Master of Architecture program at the University of Miami.
In 2012, plaintiff was diagnosed with colon cancer. He underwent two surgeries, requiring temporary placement of a colostomy bag. As a result, he was unable to work for an extended period of time. R. traveled from Florida to visit with plaintiff during his illness. Plaintiff claims that he discussed with R. his fear that he might not recover from his illness. He proposed transferring sole ownership of EA & D to her. Following those discussions, R. accelerated the completion of her Master’s program by a full year. In addition to completing her degree, R. traveled back and forth from Florida to New *721 York to assist plaintiff with design work and the administrative duties of the business. She graduated with a Master of Architecture degree in May 2013, and returned to New York to work full time with plaintiff. In January 2014, as plaintiff had discussed with R., he transferred sole ownership of EA & D to her. The transfer took place nine months prior to plaintiff commencing this divorce action on October 1, 2014, and without fair consideration.
Defendant alleges that throughout the marriage, she “directly assisted Plaintiff in his business by maintaining his office and organizing his papers, documents, pictures and brochures of various stained glass windows.” (Aff of M.M-M. ¶ 8.) She further alleges that she and plaintiff
“worked together on stained glass windows, ornaments, icons, and iconostasis for which he was commissioned . . . helped with the preparation of materials and finalizing projects . . . cleaned glass prior to and after the staining project was completed . . . sanded and stained wood, cut and painted ornaments, applied gold leaf to ornaments, icons, and icostasis and assembled wooden arch gates which are used by churches to separate the alter [sic] from the congregation . . . also painted walls in various churches.” (Id.)
Defendant claims that she also prepared lunches and dinners for plaintiff’s workers, clients, priests and bishops. In addition, she cleaned the office and work spaces.
Defendant states that plaintiff began growing distant in their relationship in or about 2006. She further alleges that in or about 2008, plaintiff threatened to divorce her and asked her to return to Ukraine. “Plaintiff began gradually cutting off [her] credit cards, urged [her] to find employment and began relocating all of his business and personal documentation from [their] home to his work studio.” (Id. ¶ 10.) In 2009, due to plaintiff’s insistence that she obtain employment, defendant began working as a nurse’s assistant at St. John’s Riverside Hospital. She claims that her “income for 2014 was $30,326.43, which included significant overtime.” (Id. ¶ 11.) Defendant obtained health insurance through her employer, allegedly saving plaintiff tens of thousands of dollars.
Defendant alleges that plaintiff has been mentally abusive towards her and has caused his adult children to become alienated from her. Plaintiff has repeatedly asked defendant to move *722 from the marital residence, even though he is presently living in Canada. Defendant further alleges that plaintiff gives her only $200 per week for her support and the support of their minor children. She asserts that plaintiff sold the car she used, forcing her to commute to work via public transportation until she financed the purchase of a car, which she pays for and supplies gas. Defendant contends that she is going into financial debt.
Defendant asserts that plaintiff established EA & D after the accountant for M. Studios informed him that he should start his own business because M. Studios had tax issues. (Aff of M.M-M. ¶ 24.) She contends that EA & D is marital property and should be valued as an asset of the marriage that is subject to equitable distribution, based upon the joint efforts of the parties during the marriage. She also claims that she worked with plaintiff when he was operating as M. Studios and that she contributed directly and indirectly to the growth of that business. She seeks a forensic valuation of both businesses in order to “separate the marital and separate asset values of said businesses . . . and determine Plaintiff’s stream of income from the business.” {Id. ¶ 37.)
The parties and counsel participated in a premotion conference before Court Attorney Referee Laurie Sullivan on July 8, 2015. Referee Sullivan issued rule E authorization for defendant to move by order to show cause for the following relief: “an order determining the reason for the transfer of the husband’s separate property business to his daughter” and “an award of child support and maintenance.” (Rule E motion compliance sheet, July 8, 2015.)
Defendant moved by order to show cause filed July 30, 2015 seeking an order directing plaintiff to pay: (a) $1,505 per month for child support, payable in two equal installments of $752.50 on the first and fifteenth day of each month; (b) all of the carrying charges and utilities for the marital residence; (c) their daughter’s private school tuition, all of their children’s extracurricular activities and their cell phone bills; (d) a computer and printer for their children; and (e) 100% of unreimbursed medical, dental and optical expenses. Defendant also requests the court to: (f) order plaintiff to maintain life insurance naming herself and the children as beneficiaries; (g) grant her exclusive use and occupancy of the master bedroom in the marital residence; (h) appoint a neutral forensic accountant to value EA & D and determine plaintiff’s stream of income from *723 the business; (i) direct plaintiff to pay the cost of the forensic evaluation, subject to reallocation at trial; and (j) award her interim counsel fees in the amount of $10,000.
The court denies all requests for pendente lite relief that were not authorized by Referee Sullivan. The court will only consider defendant’s requests for maintenance and child support, including add-ons and other related expenses. The court will also consider whether plaintiff’s transfer of EA & D just before filing the instant action was done with the intent to deprive defendant of any equitable share of the business to which she may be entitled.
Maintenance
Defendant received rule E authorization to move for a temporary maintenance award, but she declined to seek such an award. Instead, she requests the court to order “Plaintiff to continue to pay all of the carrying charges and utilities related to the marital residence including, but not limited to, the mortgage, taxes, homeowner’s insurance, utilities, maintenance and repairs and all other required expenses associated with the maintenance and upkeep of the marital residence.” (Order to show cause, subpara B at 1-2.)
The court will entertain defendant’s request, because housing expenses are a component of temporary maintenance. The statutory formula covers “all the spouse’s basic living expenses, including housing costs as well as the costs of food and clothing and other usual expenses.” (Khaira v Khaira, 93 AD3d 194, 200 [1st Dept 2012].) In addition, plaintiff does not object to paying the carrying costs of the marital residence, which continues to be his primary residence.
Accordingly, the court grants defendant’s request for an order directing plaintiff to continue to pay all costs associated with maintaining the marital residence.
Child Support
Defendant requests an award of child support in “the weekly sum of $350.00 or $1,505 per month.” (Order to show cause, aff of M.M-M. ¶ 21.) She also requests that plaintiff be directed to continue to pay the following ongoing expenses: their “daughter’s private school, all of [the] children’s sports, private lessons, extracurricular activities including group and private music and dance lesson and costumes, and cell phone bills.” Defendant also requests that plaintiff be ordered to purchase a new computer and printer for the children’s use. In addition, *724 defendant requests that plaintiff pay 100% of the children’s dental and optical expenses and unreimbursed medical expenses.
“Courts considering applications for pendente lite child support may, in their discretion, apply the CSSA standards and guidelines, but they are not required to do so.” (Rubin v Della Salla, 78 AD3d 504, 504-505 [1st Dept 2010]; George v George, 192 AD2d 693 [2d Dept 1993].) In making an award of pendente lite child support, “[t]he courts strive to strike a reasonable balance between the reasonable needs of the moving spouse and the financial ability of the opposing spouse.” (Alan D. Scheinkman, New York Law of Domestic Relations § 16:44 [11 West’s NY Prac Series 2011], citing Lasry v Lasry, 180 AD2d 488 [1st Dept 1992].)
Defendant contends that plaintiff makes much more than the $100,000 per year that he claims as his annual income. Nonetheless, she uses that amount in determining the sum she requests for child support. Defendant’s net annual income is $25,584.75 or $2,132.06 per month. She states that she pays “food, car payments, gas and maintenance [of her vehicle], children’s extracurricular activities, pet expenses, and certain credit cards.” (Aff of M.M-M. ¶ 19.) She contends that her salary is insufficient to maintain these expenses. She acknowledges that plaintiff pays her $200 per week to support herself and the children. She requests that he be ordered to pay $350 per week or $1,505 per month.[1]
Plaintiff objects generally to the $150 per week increase in the amount he pays voluntarily. Application of the CSSA to plaintiff’s (as yet unreported) income, which may or may not be accurate considering that he is now employed by a business that is owned by his daughter, would result in a higher amount than that which defendant seeks.
After considering the economic standing of both parties and the expenses of the parties’ children as set forth on defendant’s net worth statement, the court declines to apply the CSSA. Rather, the court makes an award of $300 per week or $1,290 per month in temporary child support to be paid by plaintiff to defendant on the first and fifteenth day of each month, retroactive to the date of the application on July 30, 2015. The court *725 determines this amount to be sufficient to meet the expenses of the parties’ children as claimed by defendant, given that plaintiff will maintain the carrying costs of the marital residence and does not object to paying the private school tuition for their eldest child and for their children’s extracurricular activities. The parties shall bear the cost of the children’s unreimbursed medical, dental and optical expenses equally.
Accordingly, defendant is awarded $1,290 per month, payable in two equal installments of $645 on the first and fifteenth day of each month. Plaintiff shall make an additional payment of $250 on the first and fifteenth day of each month until his arrears are satisfied.
Pre-Filing Transfer of EA & D
Defendant challenges plaintiff’s transfer of EA & D to his daughter, R., nine months prior to filing this divorce action. She asserts that the transfer was fraudulently made with the purpose to defeat her equitable distribution share of the business. She contends that plaintiff’s transfer of the business without compensation affects “the probable future financial circumstances of each party” (Domestic Relations Law § 236 [B] [5] [d] [9]); is a “wasteful dissipation of assets” (Domestic Relations Law § 236 [B] [5] [d] [12]); and should be determined to be a “transfer or encumbrance made in contemplation of a matrimonial action without fair consideration” (Domestic Relations Law § 236 [B] [5] [d] [13]). Defendant also seeks to obtain a forensic evaluation of EA & D and M. Studios. (Aff of M.M-M. ¶ 37.)
Plaintiff objects, contending that both EA & D and M. Studios are his separate property. Although he does not dispute that EA & D was established during the marriage, he claims its formation was nothing more than a change in the name of the business from M. Studios, which was created prior to the marriage. Plaintiff asserts that defendant did not play a role in either business during the marriage. He claims that she has no training or knowledge of ecclesiastical art, design or restoration which would qualify her to have done the work she claims she performed for the businesses. Plaintiff states that the dinners defendant claims she made for clients of the business were purely social occasions with friends. He denies having any business related dinners at his home and asserts that the parties have not entertained anyone at their home for the past three to four years, except for a priest who was never a client.
*726 The equitable distribution law defines marital property as “all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held.” (Domestic Relations Law § 236 [B] [1] [c].)
EA & D was created during the marriage and is presumed to have been marital property up until its transfer to R.M. in January 2014. Plaintiff, as the party claiming that it was separate property which he was free to transfer, bears the burden of overcoming that presumption. (Alan D. Scheinkman, New York Law of Domestic Relations § 14:15 at 648 [2d ed 11 West’s NY Prac Series 2009].) Plaintiff offers no documentation to support his claim that EA & D was established merely to effectuate a change in the name from M. Studios. Plaintiff’s contention is belied by his own admissions that M. Studios continued to exist as a separate entity after the formation of EA & D; that M. Studios continued to hold ownership of Gold Street; that M. Studios continued to be owned by his father and was bequeathed to plaintiff in 2008 when his father died; and that M. Studios continued to retain Gold Street even after his father’s death until plaintiff transferred it to Gold Street Family Partnership in 2012. Plaintiff has not overcome the presumption that the property was marital.
Having determined that EA & D was marital, the court may consider whether its transfer to R. was “made in contemplation of a matrimonial action without fair consideration,” pursuant to Domestic Relations Law § 236 (B) (5) (d) (13). Plaintiff concedes that the transfer was made without consideration. (Aff of S.M. ¶ 16.) Thus, the issue for resolution is whether the transfer was “made in contemplation of a matrimonial action.”
Defendant cites Matwijczuk v Matwijczuk (261 AD2d 784 [3d Dept 1999] )[2] in support of her claim that plaintiff’s transfer was improperly made in contemplation of his filing of the instant matrimonial action. In Matwijczuk, the Court held that a transfer made in close temporal proximity to the filing of the *727 matrimonial action without fair consideration was improper. The plaintiff in that case transferred the parcels on January 8, 1991, only two weeks prior to the commencement of the matrimonial action on January 22, 1991, and did so in the absence of any demonstrable consideration. Based on those circumstances, the Appellate Division held that “it was incumbent on the [trial] court to consider the transfer as one made in contemplation of the matrimonial action without fair consideration and charge plaintiff accordingly.” (Id. at 786 [citation omitted]; see also Niland v Niland, 291 AD2d 876, 876-877 [4th Dept 2002] [“Defendant’s transfer of assets in contemplation of the matrimonial action without fair consideration ‘is an express factor which must be considered in making an award of equitable distribution’ ”], citing Baker v Baker, 188 AD2d 710, 710-711 [3d Dept 1992] and Matwijczuk at 786.)
The same circumstances are present here, although the timing is not as close as it was in Matwijczuk. Plaintiff transferred EA & D nine months prior to filing the matrimonial action and did so, by his own admission, without any consideration. Matwijczuk would indicate that it is incumbent upon this court to find that the transfer was improper and that plaintiff should be charged accordingly. This court hesitates to heed Matwijczuk’s injunction, because it is not apparent from Matwijczuk whether the titled spouse who made the allegedly improper transfer sought to prove that the transfer was made for legitimate reasons that were wholly independent of, and unrelated to, the filing of the matrimonial action.
Here, plaintiff disputes that the transfer was made in contemplation of the divorce action. Defendant has established that the transfer was made in close proximity to the filing of the action and was done without consideration, thereby creating a presumption that the transfer was made in contemplation of the action. The burden shifts to plaintiff to prove that the transfer was made for a reason that is unrelated to the filing of the action.
Plaintiff asks the court to rely on Hughes v Hughes (79 AD3d 473 [1st Dept 2010]) for the proposition that a transfer of assets made close in time to the filing of a matrimonial action may be deemed to have been proper. In Hughes, the defendant husband withdrew funds from the parties’ Ameritrade account two months before his wife filed the divorce action. The Court found that the husband had no reason to believe that his spouse intended to file for divorce. Hughes is distinguishable, *728 however, because the transferor spouse was not the party who filed the divorce action. Nevertheless, Hughes supports plaintiffs contention that the transferor spouse must be given the opportunity to defend the propriety of the transfer with adequate proof.
Plaintiff contends that he transferred EA & D to R. because he had a serious illness from which he feared he might not recover or which might preclude him from being able to continue performing his work. R.’s affidavit provides support for plaintiffs contention.
Defendant counters that plaintiffs illness in 2012 was not the justification for the transfer of the business nearly two years later in January 2014. She claims that “[i]n August 2012, Plaintiffs colostomy was closed and Plaintiff was given a clean bill of health—he was diagnosed as ‘Cancer free’ and . . . has had no recurrence of Cancer.” (Aff of M.M-M. ¶ 34.)
There is a factual dispute on the issue of plaintiff’s intent regarding the transfer of EA & D and whether it was in contemplation of his filing of the divorce action. The court declines to schedule a hearing to resolve this issue because it is not ripe for disposition. The determination of defendant’s interest in EA & D relates to the ultimate equitable distribution of the parties’ assets, which is to be resolved after trial. Plaintiff may present proof at trial regarding his reason for transferring his business to his daughter. Defendant may present her own evidence to counter plaintiff’s contentions.
Accordingly, the court denies defendant’s motion to determine whether EA & D was improperly transferred, subject to renewal of the issue at the time of trial.
Request for Forensic Evaluation
Defendant raises the issue of the alleged improper transfer now because she seeks to obtain a forensic evaluation of EA & D. She also seeks a forensic evaluation of M. Studios. Court Attorney Referee Sullivan did not authorize defendant to make a request for forensic evaluations. Therefore, the court declines to consider defendant’s request.
In any event, the court is precluded from ordering a forensic evaluation of EA & D because it is no longer owned by plaintiff, having been transferred to a third party. The court has no jurisdiction over R.M. or EA & D, which is now solely owned by her. (Alan D. Scheinkman, New York Law of Domestic Relations § 14:72 at 818 [2d ed 11 West’s NY Prac Series 2009], citing Maharam v Maharam, 245 AD2d 94 [1st Dept 1997].)
*729 The court also cannot set aside the transfer of the business without “jurisdiction over the transferee and a proper basis for doing so, such as proof satisfying the requirements of the Debtor and Creditor Law.” (Id. at 818.) Therefore, the court is without power to undo the transfer. However, “[w]here the transfer cannot be undone . . . the court [may] award a greater share of any remaining property to the other spouse who has been victimized.”[3] (Id.)
In Maharam, the Appellate Division approved “[penalizing one party in the distribution of assets from a marital estate . . . where [the party’s] egregious economic misconduct . . . prevented the court from making an equitable determination.” (Id. at 94, citing Goldberg v Goldberg, 172 AD2d 316, 317 [1st Dept 1991], Iv dismissed 78 NY2d 1124 [1991].) Unable to accurately assess the value of the marital estate, the trial court awarded a 65%-35% division of the marital property. The Appellate Division upheld the division based upon substantial evidence in the record that defendant secreted assets in a foreign bank account. Thus, under circumstances where a party has prevented a marital asset from being valued, the court’s division of the asset need not be predicated upon a forensic evaluation. (See also Niland at 877 [The Appellate Division upheld the trial court’s determination that the sums of money which the defendant withdrew from the parties’ account in contemplation of the divorce action were marital property and upheld the court’s award to the plaintiff of 60% of those assets. The Court recounted the plaintiff’s greater financial contributions to the marriage and significant contributions to the growth of the defendant’s business].)
Consequently, in the event that the court determines that the transfer of EA & D constituted an improper effort to deprive defendant of equitable distribution of a marital asset, the court will consider that at trial.
With regard to defendant’s request for a forensic evaluation of M. Studios, which was always separate property, that business appears to be without any assets. The sole or primary asset of that business, the Gold Street property, was transferred on December 28, 2012. Defendant does not challenge the *730 propriety of that transfer, which is too remote from the commencement of the matrimonial action to be the basis for a valuation of even a portion of its increased value during the marriage. There is nothing to value.
Accordingly, the court denies defendant’s motion for a forensic evaluation of EA & D and M. Studios.

. The monthly amount of $1,505 requested by defendant is the result of using 4.3 as a multiplier instead of 4, in order to account for the 52 weeks of the year.

. The Third Department recently disavowed a portion of the Matwijczuk decision in Ceravolo v DeSantis (125 AD3d 113, 117 [3d Dept 2015]), stating that “[t]o the extent that Matwijczuk and Ciaffone can be read as holding that separate property contributions made by a nontitled spouse toward the acquisition or improvement of premarital property can serve to transform such property into a marital asset, they should no longer be followed.” The portion of the decision that was disavowed is not at issue here.

. If defendant were to bring a fraudulent conveyance action against R., any proceeds of that action would be “appropriately viewed as the separate property of the innocent spouse, even though the proceeds represent a return of marital property.” (Scheinkrnan, supra § 14:72 at 819, citing Hasegawa v Hasegawa, 290 AD2d 488 [2d Dept 2002].)