Spain, J.
Appeal from a judgment of the Supreme Court (Work, J.), entered February 17, 2012 in Ulster County, ordering, among other things, primary physical custody of the parties’ children to defendant and equitable distribution of the parties’ marital property, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 1990 and are the parents of three children (born in 1993, 1995 and 2001). In April 2009, the husband commenced this divorce action and, after the wife did not contest his allegations of constructive abandonment, the remaining issues proceeded to trial. Supreme Court, among other things, awarded the parties joint legal custody of the children with primary physical custody to the wife, directed the husband to pay the wife a distributive award in the amount of $143,705.22, awarded the wife $4,858.34[1] in maintenance per month for 7x/2 years and $3,141.66 in child support per month. The husband now appeals.[2]
Initially, the husband’s arguments that Supreme Court erred in failing to appoint an attorney for the children, order forensic evaluations or conduct in camera interviews of the children prior to reaching its custody determination are not preserved for appellate review because, when given the opportunity, he failed to request any of the foregoing (see Dana-Sitzer v Sitzer, 48 AD3d 354, 354 [2008]; see also Gerson v Gerson, 57 AD3d 606, 607-608 [2008]; Matter of Thompson v Thompson, 267 AD2d 516, 519 [1999]). While trial courts are strongly encouraged to appoint an attorney for the children in contested custody matters, “ ‘such appointment is discretionary, not mandatory’ ” (Matter of Ames v Ames, 97 AD3d 914, 916 [2012], lv denied 20 NY3d 852 [2012], quoting Lips v Lips, 284 AD2d 716, 716 [2001]; see Family Ct Act § 249 [a]; Moor v Moor, 75 AD3d 675, 679 [2010]; Matter of Swett v Balcom, 64 AD3d 934, 936 [2009], lv denied 13 NY3d 710 [2009]). Notably, at the beginning of the *1328 long delayed trial, the husband — for the first time — apprised the court that his pretrial proposal to settle the issues of custody and visitation had been withdrawn. The wife’s counsel then requested that the court appoint an attorney to represent the children while the husband’s counsel, rather than join that request, insisted that the trial proceed without interruption. Although the wife’s request was ultimately denied, the court noted that it would have appointed an attorney for the children had it known that custody was an issue. Under these circumstances, and in light of the evidence in the record supporting the court’s well-reasoned decision resolving custody and visitation, we cannot say that the court abused its discretion.
To the extent that the husband argues that Supreme Court’s award of primary physical custody of the children to the wife lacks a sound and substantial basis in the record, we cannot agree. It is well settled that the overriding concern in custody matters is the best interests of the children, requiring the court to consider “all relevant factors including the parents’ ability to provide a stable home environment for the child [ren], the child[ren’s] wishes, the parents’ past performance, relative fitness, ability to guide and provide for the child[ren’s] overall well-being, and the willingness of each parent to foster a relationship with the other parent” (Helm v Helm, 92 AD3d 1164, 1166 [2012] [internal quotation marks and citations omitted]; see Matter of Rundall v Rundall, 86 AD3d 700, 701 [2011]; Matter of Lynch v Gillogly, 82 AD3d 1529, 1530 [2011]). The trial court’s determination in that respect will not be disturbed so long as it is supported by a sound and substantial basis in the record (see Helm v Helm, 92 AD3d at 1166; Matter of Rundall v Rundall, 86 AD3d at 701-702).
While it is clear that the husband has been a loving and supportive parent, the record establishes that the wife was, and always has been, the children’s primary caretaker. As such, she was actively involved in their schooling, activities and medical care. The husband, on the other hand, traveled extensively for his career in the financial industry and often worked late hours. The court found that awarding primary physical custody to the wife would, among other things, maintain the greatest stability for the children, noting that the wife was genuinely willing to foster the husband’s relationships with the children. According due deference, we find that the award of primary physical custody to the wife was in the children’s best interests (see Matter of Christina MM. v George MM., 103 AD3d 935, 937 [2013]; Helm v Helm, 92 AD3d at 1166). Likewise, mindful that “Supreme Court is afforded wide discretion in crafting an ap *1329 propriate visitation schedule” (DeLorenzo v DeLorenzo, 81 AD3d 1110, 1112 [2011], lv dismissed 16 NY3d 888 [2011]), we discern no abuse of discretion in the court’s parenting schedule— providing the father with one weeknight per week, every other weekend and as the parties can agree, which provides him frequent and regular access to the children (see Matter of Maziejka v Fennelly, 3 AD3d 748, 749 [2004]).
While the husband does not challenge Supreme Court’s overall calculation of his child support obligation, he does contend that the court erred by ordering him to pay the full cost of the children’s health, dental and vision insurance, childcare and all unreimbursed copays until the wife’s income exceeds $50,000. We agree that the wife should have been ordered to pay her pro rata share (3.458% at the time of trial) of these expenses, and we modify accordingly (see Domestic Relations Law § 240 [1-b] [c] [4], [5] [i], [ii], [v]; Hughes v Hughes, 79 AD3d 473, 476 [2010]; Matter of Dudla v Coyle, 22 AD3d 990, 991 [2005]; Nichols v Nichols, 19 AD3d 775, 778 [2005]; cf. Matter of Anonymous v Anonymous, 31 AD3d 955, 957 [2006]).
We next consider the husband’s arguments concerning Supreme Court’s separate property determinations and distribution of the parties’ marital property. First, although the husband’s Chase savings account was held in his name alone, it was opened during the marriage and, thus, it was his burden to prove that it was separate property (see Vertucci v Vertucci, 103 AD3d 999, 1004 [2013]; Judson v Judson, 255 AD2d 656, 657 [1998]; Seidman v Seidman, 226 AD2d 1011, 1012 [1996]). While it is undisputed that, prior to the marriage, the husband received approximately $132,000 as a personal injury award— which would constitute separate property (see Domestic Relations Law § 236 [B] [1] [d] [2]) — his testimony concerning the location of these funds was not credible or consistent.[3] As the husband failed to carry his burden to establish that the savings account was separate property, it was properly classified and eq *1330 uitably distributed as marital property (see Vertucci v Vertucci, 103 AD3d at 1004; Murray v Murray, 101 AD3d 1320, 1322 [2012], lv dismissed 20 NY3d 1085 [2013]; Steinberg v Steinberg, 59 AD3d 702, 704 [2009]; compare D’Ambra v D’Ambra, 94 AD3d 1532, 1535 [2012]). On the other hand, the husband’s more consistent testimony that $9,695.92 of his IRA account consisted of premarital earnings was uncontroverted by the wife and conceded in her written summation; thus, the husband is entitled to be credited that amount (see Keil v Keil, 85 AD3d 1233, 1235 [2011]; London v London, 21 AD3d 602, 604 [2005]) and, accordingly, the value of the IRA account subject to the qualified domestic relations order is $156,945.89. Additionally, the husband correctly points out an error in the court’s calculation of the wife’s distributive award, which should equal $148,938.09 rather than $143,705.22.
With regard to the division of marital property, “there is no requirement that the distribution of each item of marital property be on an equal or 50-50 basis” (Quinn v Quinn, 61 AD3d 1067, 1069 [2009] [internal quotation marks and citation omitted]; see Lurie v Lurie, 94 AD3d 1376, 1378 [2012]). Moreover, “[a] trial court has substantial discretion to fashion [equitable distribution] awards based on the circumstances of each case, and the determination will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors” (Vertucci v Vertucci, 103 AD3d at 1001 [internal quotation marks and citation omitted]; see Williams v Williams, 99 AD3d 1094, 1096 [2012]).
In light of the disparity in the parties’ financial circumstances and their future earning potential, as well as the wife’s loss of inheritance rights and health insurance, factors that were considered by Supreme Court, and considering that “marital property is distributed in light of the needs and circumstances of the parties” (Brzuszkiewicz v Brzuszkiewicz, 28 AD3d 860, 861 [2006] [internal quotation marks and citation omitted]), the court’s decision not to award the husband a portion of the wife’s insubstantial IRA and life insurance policy was not an abuse of discretion. It would, however, be more practical and equitable for the wife to equally split the payments that the husband will receive from his AIG pension annuity should he reach the age of 65, subject to a qualified domestic relations order, rather than requiring him to purchase a separate annuity for her (see e.g. Malin v Malin, 172 AD2d 721, 722 [1991]). Finally, as the husband volunteered to absorb the full amount of any deficiency judgment if the marital residence were sold at a loss, he cannot now be heard to complain that the court ordered him to *1331 do so and, in any event, it was not error (see Ropiecki v Ropiecki, 94 AD3d 734, 736 [2012]).
Turning to the husband’s challenge to the wife’s maintenance award, it is well settled that the amount and duration of maintenance is an issue that is generally left to the sound discretion of the trial court so long as the court considers the enumerated statutory factors (see Domestic Relations Law § 236 [B]; Murray v Murray, 101 AD3d at 1322; Williams v Williams, 99 AD3d at 1096). Notably, maintenance is appropriate where, among other things, “ ‘the marriage is of long duration, [and] the recipient spouse has been out of the work force for a number of years [and] has sacrificed her or his own career development or has made substantial noneconomic contributions to the household or to the career of the payor’ ” (Williams v Williams, 99 AD3d at 1095, quoting Ndulo v Ndulo, 66 AD3d 1263, 1265 [2009]; see Murray v Murray, 101 AD3d at 1322).
Here, in reviewing the appropriate factors, Supreme Court considered the parties’ financial circumstances, their age, the length of their marriage (21 years), and the wife’s loss of substantial inheritance rights and health insurance. The court placed particular significance on the disparity between the husband’s income, which exceeded $200,000, and the wife’s income, which was less than $10,000 a year. Notably, early in the parties’ marriage, the wife quit her job so that the parties could move to another state where the husband had obtained employment and, thereafter, the family moved often for the husband’s career. The court further considered the wife’s post-divorce ability to increase her earning potential, taking into account her age and prolonged absence from the work force. Accordingly, as the court considered the requisite factors, we discern no abuse of discretion in the amount and duration of the maintenance awarded (see Murray v Murray, 101 AD3d at 1322; Harrington v Harrington, 93 AD3d 1092, 1094 [2012]; O’Connor v O’Connor, 91 AD3d 1107, 1108-1109 [2012]; Roberto v Roberto, 90 AD3d 1373, 1376 [2011]). The husband’s remaining contentions have been considered and determined to be without merit.
Rose, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as (1) ordered plaintiff to pay 100% of the costs of the children’s health, dental and vision insurance, unreimbursed copays and childcare expenses, (2) ordered equitable distribution of all of plaintiffs IRA account, (3) awarded defendant $143,705.22 in equitable distribution and (4) ordered plaintiff to purchase a new annuity for the ben *1332 efit of defendant; defendant is ordered to pay her pro rata share (3.458%) of the children’s health, dental and vision insurance, unreimbursed copays and childcare expenses, $9,695.92 of plaintiff’s IRA account is his separate property, leaving the reduced value of the IRA subject to a qualified domestic relations order at $156,945.89, and defendant is awarded $148,938.09 in equitable distribution and 50% of plaintiff’s AIG pension annuity payments via a qualified domestic relations order should plaintiff reach the age of 65; and, as so modified, affirmed.

. Approximately $4,100 of this amount was to cover the carrying costs on the marital residence. Supreme Court ordered that once the marital residence was sold, the maintenance amount would decrease to $4,274.84.

. While the husband appealed from the October 7, 2011 decision in error, we granted his motion to deem the notice of appeal to be a valid appeal taken from the final judgment of divorce, dated January 17, 2012. We also subsequently denied the wife’s motion to dismiss the husband’s appeal as untimely (2012 NY Slip Op 93039[U] [2012]).

. The husband initially testified that all of the personal injury funds were deposited in a Wachovia account and that, in 2008, he transferred $60,000 of those funds into the newly opened Chase savings account. Despite his testimony that there were no more deposits into the savings account, at the commencement of this action, that account had a balance of approximately $94,000 and the husband never accounted for the $34,000 surplus. This confusion was compounded by the husband’s later testimony that he used some of the personal injury award funds in the savings account to pay household bills and that the Chase savings account had a balance of approximately $152,000. Moreover, on his statement of net worth, the husband listed the source of the $94,000 in this account as his “earnings,” not as compensation for personal injuries.