*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 7, 2016                521100
_____

LORI FERMON,
                    Respondent-
                    Appellant,
        v                                    MEMORANDUM AND ORDER

IVAN FERMON,
                    Appellant-
                    Respondent.
_____


Calendar Date:   November 24, 2015

Before:  Garry, J.P., Rose, Lynch, Devine and Clark, JJ.

_____


        Friedman and Molinsek, PC, Delmar (Stephen L. Molinsek of
counsel), for appellant-respondent.

        Melody A. Mackenzie, Troy, for respondent-appellant.

        Tracey A. Brown, Clifton Park, attorney for the children.

_____


Devine, J.

        Cross appeal from an order of the Supreme Court (Elliott
III, J.), entered December 3, 2014 in Rensselaer County, which,
among other things, granted plaintiff's motion to modify the
parties' judgment of divorce.

        Plaintiff (hereinafter the wife) and defendant (hereinafter
the husband) were married in 2000 and have two sons (born in 2002
and 2006).  The parties divorced in 2012 and, pursuant to a
written stipulation of settlement that was incorporated but not
merged with the judgment of divorce, they retained joint custody
of the children and waived application of the Child Support

Standards Act (see Domestic Relations Law § 240 [1-b]) to provide for no payments of basic child support.  The stipulation also resolved issues of equitable distribution by, among other things, directing the husband to transfer a portion of his individual retirement account to the wife.

Extensive motion practice ensued, with the wife seeking a variety of relief that included modification of the custody and child support provisions of the judgment, an assessment as to whether the husband committed fraud in the negotiations that led to the execution of the stipulation and an award of counsel fees to the wife.  Supreme Court conducted a hearing on the motions, after which it modified the provisions of the judgment to grant the wife sole legal custody of the children and directed the husband to pay the wife basic child support, arrearages and various add-ons.  Supreme Court further directed the husband to pay an additional $11,500 to the wife due to his alleged fraud in misrepresenting the value of his individual retirement account, and awarded the wife $35,000 in counsel fees.  The husband appeals and the wife cross-appeals.

We are initially unpersuaded by the husband's contention that Supreme Court erred in granting sole legal custody and primary physical placement of the children to the wife.  A custody arrangement may be modified where it is established that "a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis" (Matter of Menhennett v Bixby, 132 AD3d 1177, 1179 [2015]; see Matter of Kiernan v Kiernan, 114 AD3d 1045, 1046 [2014]).  The parties have become unable to collaborate in a reasonable manner with regard to the children, an inability that is amply demonstrated by incidents such as the husband summoning the police to take the children from the wife's home while they were eating dinner, his berating the wife in front of one of the children over a seemingly minor dispute, his arguing that the children should spend Christmas with him in contravention of the custody arrangement, and his ongoing refusal to honor the wife's "right of first refusal" to care for the children if he was unable to do so during his custodial time.  A psychologist who prepared an evaluation at the behest of Supreme Court opined that it was "exceedingly difficult [for the parties] to directly

interact with each other civilly" and, indeed, both parties acknowledged that the breakdown in communication had reached the point where regular collaboration was no longer advisable. The foregoing demonstrates a change in circumstances since the entry of the divorce judgment that rendered joint custody inappropriate and triggered a best interests inquiry (see Matter of Zahuranec v Zahuranec, 132 AD3d 1175, 1176 [2015]; Heather B. v Daniel B., 125 AD3d 1157, 1159-1160 [2015]; Matter of Sherwood v Barrows, 124 AD3d 940, 941 [2015]).

As for the issue of what custodial arrangement would be appropriate, both parties are loving and capable parents, and there are no concerns as to the ability of either to provide for the well-being of the children. Supreme Court was properly concerned, however, by the "numerous examples of [the husband] not acting with the children's best interest in mind." Inasmuch as the wife has continued to seek to foster a positive relationship between the husband and the children, a sound and substantial basis in the record supports the finding of Supreme Court that the best interests of the children were served by awarding her sole custody and primary physical placement (see Matter of Zahuranec v Zahuranec, 132 AD3d at 1177; Matter of Smith v O'Donnell, 107 AD3d 1311, 1313 [2013]).

While we perceive no reason to disturb the award of sole legal custody and primary physical placement to the wife, we do find the absence of a sound and substantial basis in the record to support the limited parenting time granted to the husband. The stipulation detailed the amount of parenting time available to the parties, but they later reached an informal agreement to split parenting time on alternating weeks. Supreme Court directed a clinical psychologist to evaluate the situation, and she prepared an exhaustive report recommending that the parties continue to exercise equal parenting time, albeit over the course of a week as opposed to alternating weeks. The husband and the attorney for the children expressed their preference for this type of schedule at oral argument and, indeed, the wife testified at the hearing in this matter that she viewed a split week schedule as "the best that could happen for the" children and that she was "[a]bsolutely" willing to adopt it. Despite this seeming agreement, Supreme Court did not make an award of equal

parenting time and gave no reason for its failure to do so. As the attorney for the children advises us that a hearing will soon be conducted on a proceeding brought by the husband to modify the custody and visitation terms of the order on appeal, "we are reluctant to attempt to adjust the visitation schedule on this record" (Matter of Esterle v Dellay, 281 AD2d 722, 728 [2001]). We accordingly deem it prudent to remit this matter to Supreme Court so that an appropriate award of parenting time to the husband may be fashioned, perhaps with a referral to Family Court so that it may grapple with that issue at the same time as it addresses the husband's application to modify the custody and visitation provisions of the order (see Family Ct Act § 467 [a]; Matter of Rumpff v Schorpp, 133 AD3d 1109, 1113 [2015]; Matter of Lattuca v Natale-Lattuca, 293 AD2d 805, 807 [2002]).

Turning to the question of child support, "a party seeking to modify a child support order arising out of an agreement or stipulation must first establish that the stipulation was unfair when entered into or that there has been an unanticipated and unreasonable change in circumstances leading to an accompanying need" (Matter of Watrous v Watrous, 295 AD2d 664, 666 [2002]; accord Matter of Hunt v Bartley, 85 AD3d 1275, 1276 [2011]). While the husband presents strained arguments to the contrary, the terms of the stipulation regarding basic child support were unfair when they were entered into, as they were premised upon his fraudulent misrepresentation that his annual income was $136,106 when, as the wife belatedly discovered, he had accepted a position that paid $170,000 a year plus bonuses (see Marlinski v Marlinski, 111 AD3d 1268, 1270 [2013]; Chapin v Chapin, 12 AD3d 550, 551 [2004]). Supreme Court therefore acted appropriately in modifying the award of child support. The husband complains of certain terms in the modified award but, in that regard, Supreme Court properly directed that the husband remit 25% of any future bonuses as basic child support (see Quilty v Quilty, 169 AD2d 979, 981 [1991]). Supreme Court also acted appropriately in leaving intact the commitments of the husband to pay a portion of various add-on expenses, albeit with a share adjusted to reflect his actual income (see e.g. Berretta v Berretta, 201 AD2d 886, 887 [1994]).

We next agree with the husband that Supreme Court erred in modifying the agreed-upon division of assets in his individual retirement account. The husband did not preserve his objection to the wife raising this issue in a motion rather than a plenary action and, in any event, "a court's alteration of a stipulation absent a plenary action is not fatal" (MacDonald v Guttman, 72 AD3d 1452, 1455 [2010]; see CPLR 2001; Banker v Banker, 56 AD3d 1105, 1107 n 2 [2008]). Nonetheless, while a stipulation "will be more closely scrutinized by the courts than ordinary contracts given the fiduciary relationship between husband and wife, such an agreement will not be set aside unless there is evidence of 'overreaching, fraud, duress or a bargain so inequitable that no reasonable and competent person would have consented to it'" (Empie v Empie, 46 AD3d 1008, 1009 [2007], quoting Curtis v Curtis, 20 AD3d 653, 654 [2005]). The parties agreed to distribute the husband's individual retirement account based upon its December 2011 value, the point at which the most recent account statement had been issued. The account had grown considerably by the time the stipulation was executed in March 2012, but the husband admittedly made no effort to learn the value of the account at that time and did not know that the appreciation had occurred. It is well settled "that nondisclosure is not the equivalent of fraud" and, given that the wife acknowledged in the stipulation that she did not require further information from the husband in order to knowingly proceed, Supreme Court erred in setting aside that part of the stipulation dealing with equitable distribution of the husband's individual retirement account (Paul v Paul, 177 AD2d 901, 901 [1991], lv denied 79 NY2d 756 [1992]; see Empie v Empie, 46 AD3d at 1009).

Both parties challenge the award of counsel fees, with the husband arguing that no award was appropriate and the wife asserting that the award was too low. The wife requested an award of counsel fees resulting from the various violations of the stipulation committed by the husband, which were allowed under the terms of the stipulation as well as Domestic Relations Law §§ 237 and 238, and the parties submitted written applications for counsel fees after the hearing in this matter

had concluded.[1]  "An award of counsel fees requires that an evidentiary basis be established as to two elements: the parties' respective financial circumstances and the value of the legal services rendered" (Curley v Curley, 125 AD3d 1227, 1231 [2015]; see Yarinsky v Yarinsky, 2 AD3d 1108, 1110 [2003]).  Counsel for the wife submitted her retainer agreement and billing statements from September 2012 to October 2014, from which Supreme Court calculated that the wife had incurred over $77,000 in counsel fees.  Supreme Court found that the amount of work performed by counsel was appropriate given the myriad issues created by the conduct of the husband and noted that, while the wife had significant financial resources of her own, she was nonetheless the less monied spouse.  Supreme Court accordingly awarded the wife $35,000 in counsel fees, and we perceive no abuse of discretion in its decision to do so (see Lowe v Lowe, 123 AD3d 1207, 1211 [2014]; Howard v Howard, 45 AD3d 944, 945-946 [2007]).

The parties' remaining arguments, to the extent that they are properly before us, have been examined and found to be lacking in merit.

Garry, J.P., Rose, Lynch and Clark, JJ., concur.

---

[1]  The stipulation purports to direct an award of "any and all" counsel fees incurred by a party forced to pursue legal remedies for its breach, but Supreme Court was not bound to make such an award and retained its "inherent authority to determine reasonable attorneys' fees" (Orix Credit Alliance v Grace Indus., 261 AD2d 521, 521-522 [1999], lv denied 93 NY2d 818 [1999]; see Matter of Stortecky v Mazzone, 85 NY2d 518, 525 [1995]; Fackelman v Fackelman, 71 AD3d 724, 726-727 [2010]).

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as set a visitation schedule for defendant and directed defendant to pay $11,500 for a portion of his individual retirement account; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision and, pending said proceedings, the terms of said order with regard to visitation shall remain in effect on a temporary basis; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court