*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 14, 2016                    520716
_____

PAOCHING FUNARO,
                    Respondent,

         v                                    MEMORANDUM AND ORDER

DOMINICK R. FUNARO,
                    Appellant.
_____

Calendar Date:  May 23, 2016

Before:  Garry, J.P., Egan Jr., Lynch, Devine and Mulvey, JJ.

_____

        The Arquette Law Firm, PLLC, Clifton Park (Tammy J. Arquette of counsel), for appellant.

        Barrett D. Mack, Albany, for respondent.

        Nicole R. Rodgers, Saratoga Springs, attorney for the child.

_____

Lynch, J.

        Appeal from a judgment of the Supreme Court (Jensen, J.), entered September 25, 2014 in Saratoga County, awarding, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

        Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married on August 7, 2004 and have one child (born in 2006).  The wife left the marital residence in November 2012 and commenced this action for a divorce in January 2013.  In February 2014, at the conclusion of a bench trial, which principally focused on the issue of custody, Supreme Court issued a temporary custody order granting the parties joint legal and

shared physical custody of the child and authorizing the wife to enroll the child in counseling.[1] In July 2014, Supreme Court issued written findings of fact and conclusions of law granting the wife sole legal custody and primary physicial custody of the child, with parenting time to the husband. The court also distributed the marital property and debt, directed the wife to pay maintenance to the husband and ordered the husband to pay child support and to purchase a life insurance policy. The judgment of divorce and order of custody were issued and filed in September 2014. The husband now appeals.[2]

A court's primary concern in a child custody determination is the best interests of the child (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Bowman v Engelhart, 112 AD3d 1187, 1187 [2013]). This determination is made through consideration of "such factors as maintaining stability for the child, the child's wishes, the home environment with each parent, each parent's past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (Matter of Jolynn W. v Vincent X., 85 AD3d 1217, 1217 [2011] [internal quotation marks and citations omitted], lv denied 17 NY3d 713 [2011]; see Bowman v Engelhart, 112 AD3d at 1187). While joint custody is preferred, if the parents are unable to communticate and make decisions cooperatively, it may not be possible (see Matter of Benjamin v Lemasters, 125 AD3d 1144, 1145 [2015]; Matter of DiMele v Hosie, 118 AD3d 1176, 1177 [2014]).

Indisputably, the evidence demonstrated that both parents

---

[1] By this temporary order, Supreme Court primarily formalized the informal custodial arrangements that the parties had been attempting to follow. We reject the husband's threshhold argument that the delay between the temporary order and the permanent order necessitated any further fact-finding (compare E.V. v R.V., 130 AD3d 920, 921-922 [2015]).

[2] Except insofar as it relates to his argument that he is unable to comply with Supreme Court's economic award, the husband does not challenge the court's child support order.

love the child and were able to provide an adequate home environment following their separation. Although the wife worked two jobs, the evidence revealed that she had the more flexible schedule and that she was the parent who was primarily responsible for the child's health care and education needs. The evidence also demonstrated that, since their separation, the parties rarely agreed on what was best for the child. For example, at trial, the parties testified that they could not agree to send the child to summer school or to counseling, even though both were recommended by the child's teachers. While the wife favored pursuing both recommendations, the husband explained that, even though he did not speak to the teachers about these recommendations, he refused to consent because he knew what the child needed to do to remain on track academically during the summer. As for counseling, the husband explained that he spent hours talking to and "analyzing" the child and he did not believe it was necessary — an approach we find unsettling.

Although there was no finding of alienation, there was evidence that the husband engaged the child in inappropriate conversations regarding the parties' separation, their financial situation and the wife and her paramour, and that he even discussed the wife's trial testimony during the course of the fact-finding hearing with the child. Mary C. O'Connor, a psychologist assigned by Supreme Court, interviewed the parties and the child and reported that the child "echoed several adult-like negative remarks" about the wife. O'Connor also confirmed that the child had been "compromised" by the husband's "disparaging behavior" and opined that the husband demonstrated poor judgment by treating the child as his "buddy," allowing the child to play adult/combat-themed video games and to access the Internet without supervision. In contrast, she described the wife as an "exceptionally skilled, organized, and consistently positive parent capable of providing [the child] with the structure and support necessary to facilitate his development and encourage a sustained positive father-son relationship."

Although the husband asserted that O'Connor lied in her report, Supreme Court discredited his testimony and we defer to the court's determination in this regard (see Matter of Ryan v Lewis, 135 AD3d 1135, 1137 [2016]). Further, we are mindful that

both the attorney for the child and O'Connor were amenable to the parties sharing custody of the child, but neither position was binding on the trial court (see Matter of Virginia C. v Donald C., 114 AD3d 1032, 1035 [2014]; Matter of Conway v Gartmond, 108 AD3d 667, 668 [2013]).  Giving the requisite deference to Supreme Court's credibility determinations (see Matter of DiMele v Hosie, 118 AD3d at 1177), we find that the award of sole legal and primary physical custody to the wife was supported by a sound and substantial basis in the record (see Fermon v Fermon, 135 AD3d 1045, 1046 [2016]; Robert B. v Linda B., 119 AD3d 1006, 1008-1010 [2014], lv denied 24 NY3d 906 [2014]; Matter of Festa v Dempsey, 110 AD3d 1162, 1163 [2013]; Jeannemarie O. v Richard P., 94 AD3d 1346, 1348 [2012]).

The husband also contends that Supreme Court should have granted him more liberal parenting time.  The trial court has broad discretion in fashioning a parenting schedule that is in the best interests of the child (see Matter of Finkle v Scholl, ___ AD3d ___, ___, 2016 NY Slip Op 04293, *3 [2016].  "It is well settled that '[the court's] . . . findings in [this] regard are entitled to great deference unless they lack a sound and substantial basis in the record'" (Matter of Wagner v Wagner, 124 AD3d 1154, 1154 [2015], quoting Matter of Daniel v Pylinski, 61 AD3d 1291, 1292 [2009]).  Here, in addition to extended vacation periods and shared holidays, Supreme Court granted the husband parenting time every other weekend and one weeknight each week.  Inasmuch as this provides "frequent and regular access" to the child, we discern no abuse of discretion (Matter of Daniel v Pylinski, 61 AD3d at 1292 [internal quotation marks and citation omitted]; see Musacchio v Musacchio, 107 AD3d 1326, 1329 [2013]).

The husband also argues that Supreme Court's equitable distribution award was unjust.  It is well settled that equitable distribution of marital property does not necessarily require property to be divided equally (see Vertucci v Vertucci, 103 AD3d 999, 1001 [2013]).  Because Supreme Court has "substantial discretion" when making an equitable distribution award, we will not disturb its determination "absent an abuse of discretion or failure to consider the requisite statutory factors" (Buchanan v Buchanan, 132 AD3d 1182, 1183 [2015] [internal quotation marks and citations omitted]).  Here, the court determined that the

marital residence,[3] certain checking and savings accounts, the wife's pension and 401(k) account, five vehicles, the husband's trade certificate and various household items and jewelry were marital property.[4]  Further, the court determined that, in addition to the note and mortgage on the marital residence, the parties borrowed $16,000 to perform certain home repairs during the marriage.  Further, the parties had marital debt consisting of two credit cards with balances of $4,750 and $5,000, a personal loan in the amount of $6,949, a line of credit in the amount of $9,867 obtained to finance the husband's pursuit of the trade certificate and the husband's education loans.  The court directed the parties to sell the marital residence, but awarded the husband exclusive occupancy and directed him to pay the mortgage and all carrying charges during the pendency of the sale.  The husband was also awarded one half of the net proceeds after the sale of the marital residence, one half of the wife's 401(k) account and one half of the proceeds from the sale of the vehicles and household items.  With regard to the marital debt, the court essentially divided it equally between the parties, directed the wife to assume responsibility for payment of the larger credit card balance, and the card with the smaller balance was given to the husband.  He was also directed to pay his own student loan debt.

The husband's primary argument on appeal is that Supreme Court did not give adequate consideration to the statutory factors before assigning him responsibility for essentially one half of the parties' marital debt, and he contends that he does not have the means to meet his monthly financial obligations resulting from the distributive award.  Here, there was no evidence that the debt was solely incurred by either party but, rather, that it was obtained for household improvements and expenses.  Considering the circumstances and that Supreme Court

_____

[3]  The parties paid $197,500 for the marital residence.  At the time of trial, its fair market value was $245,000 and there was $181,000 payable on the note.

[4]  There was no evidence presented with regard to the value of the trade certificate.

awarded the husband essentially one half of the marital assets, we cannot say that the court abused its discretion by allocating the marital debt substantially equally to each party (see Cornish v Eraca-Cornish, 107 AD3d 1322, 1323-1324 [2013]; McKeever v McKeever, 8 AD3d 702, 702-703 [2004]; Corbett v Corbett, 6 AD3d 766, 768 [2004]).

The husband also challenges Supreme Court's maintenance award, consisting of $200 per week from July 2014 to December 2014, reduced to $100 per week throughout 2015. This determination is left to the trial court's discretion and will not be disturbed as long as the court explains the basis for its conclusions, considers the parties' predivorce standard of living and statutory factors – such as the income and property of the parties, the length of the marriage, the age and health of the parties, the need of either party to obtain education or training and the equitable distribution of the marital property (see Domestic Relations Law § 236 [B] [former (6)]; Orioli v Orioli, 129 AD3d 1154, 1155 [2015]). Spousal maintenance is generally not supposed to be permanent, but is intended to allow the recipient time to become self-sufficient (see Vantine v Vantine, 125 AD3d 1259, 1261 [2015]). Here, although he does not earn as much as the wife does, the husband is young, healthy and gainfully employed. Under the circumstances, Supreme Court's maintenance award was not an abuse of discretion because the court adequately considered the statutory factors and noted the husband's ability to support himself (see Curley v Curley, 125 AD3d 1227, 1228-1229 [2015]; Quarty v Quarty, 96 AD3d 1274, 1277 [2012]).

Finally, although we find that Supreme Court was authorized to direct the husband to purchase a life insurance policy in the amount of $250,000 (see Murray v Murray, 101 AD3d 1320, 1325 [2012], lv dismissed 20 NY3d 1085 [2013]), the husband should have been allowed to obtain a declining term policy that would reduce the amount of coverage by the amount of child support that he actually paid (see Quinn v Quinn, 61 AD3d 1067, 1073 [2009]; Matter of Anonymous v Anonymous, 31 AD3d 955, 957 [2006]).

Garry, J.P., Egan Jr., Devine and Mulvey, JJ., concur.

ORDERED that the judgment is modified, on the facts, without costs, by reversing so much thereof as directed defendant to maintain a $250,000 life insurance policy; defendant is permitted to obtain a declining term life insurance policy in the amount of $250,000; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court