Garry, J.P.
 

 Appeal from a judgment of the Supreme Court (Cassidy, J.), entered April 1, 2016 in Tompkins County, ordering, among other things, equitable distribution of the parties’ marital property, upon a decision of the court.
 

 Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1990 and have two children (born in 1999 and 2002). In March 2013, both parties filed family offense petitions and Family Court issued a temporary order of protection in favor of the wife and the children. In May 2013, the wife commenced this action for divorce. After the husband joined issue, Supreme Court (Ames, J.) issued a pendente lite order that continued the temporary order of protection, granted temporary sole custody of the children to the wife, directed the husband to pay temporary child support, and transferred the combined family offense proceedings and divorce action to the integrated domestic violence part of the court.
 

 In December 2015, after a trial, Supreme Court (Rowley, J.) issued a decision that, as pertinent here, sustained the wife’s family offense petition, continued the order of protection, awarded sole custody of the children to the wife with supervised parenting time for the husband, distributed the parties’ assets—including the husband’s interest in his law firm and the wife’s interest in her landscape architecture firm—ordered the husband to pay child support and directed him to pay counsel fees to the wife. Supreme Court (Cassidy, J.) thereafter issued a judgment of divorce incorporating the terms of the decision. The husband appeals.
 

 We reject the husband’s contention that the child support award constituted impermissible double counting on the ground that his partnership interest in his law firm was equitably distributed as marital property, while the child support award was based on his income from the same firm. As the husband argues, it is well-established that income from an intangible asset, such as a professional license, that has been equitably distributed as marital property may not also form the basis of a maintenance award (see Grunfeld v Grunfeld, 94 NY2d 696, 704-706 [2000]; Gifford v Gifford, 132 AD3d 1123, 1124-1125 [2015]; see also Keane v Keane, 8 NY3d 115, 121-122 [2006]).
 
 [1]
 
 However, it is also well established that the rule against double counting does not apply to the calculation of child support, as the Child Support Standards Act (see Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) does not authorize the deduction of a distributive award from a parent’s income for this purpose (see Holterman v Holterman, 3 NY3d 1, 13 [2004]). Maintenance was not awarded here, and the husband’s arguments based upon the 2015 amendments to Domestic Relations Law § 236 (B) (6) are not germane; his challenge to the child support award is governed by the CSSA, which has not been similarly amended and, as before, “simply does not authorize a court to deduct a distributive award from the titled spouse’s income” (Holterman v Holterman, 3 NY3d at 13).
 

 Next, the husband contends that his child support obligation should not have been based upon his income in 2013 and 2014 because his personal income tax returns for those years were not in evidence. This contention is unpreserved, as the husband made no objection or argument on this ground at trial (see Severing v Severing, 97 AD3d 956, 957 [2012]; Hollis v Hollis, 188 AD2d 960, 961 n 2 [1992]). As for the husband’s related contention that his trial counsel was ineffective for failing to ensure that this tax information was admitted, the record reveals that, contrary to his present contention, the husband’s 2013 individual tax return was, in fact, admitted into evidence during the trial.
 
 [2]
 
 His law firm’s 2014 tax return was admitted into evidence, and the wife asserts that he did not supply his personal tax return for 2014 despite her repeated requests in the course of discovery. The wife therefore relied upon the husband’s trial testimony, the law firm tax return and the husband’s 2014 W-2 form—which was apparently turned over by the husband’s counsel at the close of trial—as the basis for the 2014 income calculations in her closing submission.
 
 [3]
 
 In the circumstances presented, the husband’s claim that his trial counsel should have objected to the absence of his 2013 and 2014 tax information has no merit, nor does the record, viewed as a whole, otherwise demonstrate any failure to provide meaningful representation (see generally Matter of Hissam v Mackin, 41 AD3d 955, 957 [2007], lv denied 9 NY3d 809 [2007]).
 

 Contrary to the husband’s argument, Supreme Court’s (Rowley, J.) recitation of the factual findings upon which the child support award was based was sufficient to permit intelligent appellate consideration. Although terse, the decision plainly demonstrates that the court correctly applied the three-step analysis required by the CSSA, in which a court must first determine the combined parental income, then multiply that amount by the applicable statutory percentage and allocate the result between the parties based upon their pro rata shares of the combined income, and finally, determine the amount of additional support to be paid on any income greater than the statutory cap (see Domestic Relations Law § 240 [1-b] [c]; Holterman v Holterman, 3 NY3d at 10-11; Armstrong v Armstrong, 72 AD3d 1409, 1412 [2010]). The court set forth the income it had determined for each party for each of the pertinent years, the wife’s pro rata share of the parties’ combined income—and thus, by implication, the husband’s—and its choice to apply the statutory percentage to the full amount of the husband’s income over the statutory cap, and then determined the amounts of the husband’s retroactive 2013 child support obligation and his future obligation. Although the husband now argues that the court should have set forth more factual detail as to the underlying calculations—and we agree that doing so would have been the better practice—he does not contend that there were any mathematical errors or omissions. We perceive no reason for remittal on this basis.
 

 Supreme Court did not err in applying the percentage specified in the CSSA to the full amount of income over the statutory cap. Upon concluding that the parties’ combined income was significantly greater than the applicable limits for 2013 and 2014, the court was required, in its discretion, either to apply the statutory child support percentage—here, 25% for two children—to the full amount, or to order the payment of some other amount if it determined after examining the requisite factors that the statutory percentage would be unjust or inappropriate (see Domestic Relations Law § 240 [1-b] [b] [3]; [f]; Matter of Cassano v Cassano, 85 NY2d 649, 653 [1995]). “In doing so, the trial court must set forth a record articulation for deviating or not deviating from the statutory guideline and relate that articulation to the statutory factors” (Moschetti v Moschetti, 277 AD2d 838, 840 [2000] [citations omitted]; see Matter of Cassano v Cassano, 85 NY2d at 655; Petersen v Petersen, 125 AD3d 1234, 1235 [2015]). Here, the court stated that it was adopting interim findings made in the pendente lite order, to the effect that no deviation from the statutory cap was appropriate because the children had become accustomed to the reasonable luxuries provided by the parties’ significant income, including private schools, travel to international destinations and attendance at summer camps and educational events. The court thus provided a brief explanation of the basis for its decision, and related it to the factors set out in the statute (see Domestic Relations Law § 240 [1-b] [f] [3]; Cassano v Cassano, 85 NY2d at 652; Bean v Bean, 53 AD3d 718, 724-725 [2008]).
 

 Although Supreme Court did not expressly discuss the remaining statutory factors, we find no reason to remit, as the record is sufficiently complete to permit this Court to conduct an independent review (see e.g. Petersen v Petersen, 125 AD3d at 1235-1237). Both parties earn substantial incomes, but the husband’s income is significantly higher than the wife’s (see Domestic Relations Law § 240 [1-b] [f] [7]). Supreme Court credited the wife’s testimony that the emotional health of both children had been adversely affected by the husband’s belligerent behavior during the marriage, which had led to treatment needs including one child’s hospitalization for depression and posttraumatic stress syndrome (see Domestic Relations Law § 240 [1-b] [f] [2]). Nothing in the record revealed that the husband, who had chosen to move to Florida, made significant nonmonetary contributions to the children’s well-being. Further, although he had formerly made regular trips from Florida to New York to visit the children, the husband announced at the close of trial that he intended to discontinue his visits with the children, and, as represented to this Court by counsel, did in fact cease visiting them thereafter (see Domestic Relations Law § 240 [1-b] [f] [5], [9]). The child support award did not require the husband to contribute to the children’s anticipated college expenses, and, although the children had trust accounts for this purpose, the wife testified that they were not adequate to cover all of these costs (see Domestic Relations Law § 240 [1-b] [f] [1], [2]). Thus, upon consideration of the pertinent factors, we find nothing unjust or inappropriate and no abuse of discretion in the amount of the award (see Klauer v Abeliovich, 149 AD3d 617, 618-619 [2017]).
 

 Turning to equitable distribution, Supreme Court did not err in finding that the wife owned a 10% interest in her landscape architecture firm. The valuation of a party’s business for this purpose is an exercise of the trial court’s fact-finding power that will not be disturbed upon appeal where, as here, “it rests primarily on the credibility of expert witnesses and their valuation techniques” (Keil v Keil, 85 AD3d 1233, 1237 [2011] [internal quotation marks and citation omitted]; see Hiatt v Tremper-Hiatt, 6 AD3d 1014, 1015 [2004]). The husband’s expert asserted that the wife owned 23% of the firm in 2011 and 36% in 2012, 2013 and 2014, stating that these conclusions were based upon the firm’s tax returns, which provided these figures as the wife’s share of “profit, loss and capital.” The wife’s expert offered a different opinion, testifying that the entries were plainly erroneous.
 
 [4]
 
 He opined that the entries actually stated the percentage of the wife’s income as compared to that of the firm’s other owners, and that the wife’s actual ownership percentage was 10% as set out in the firm’s partnership agreement. The accountant who prepared the tax forms confirmed the opinion of the wife’s expert, stating that he had mistakenly used figures that reflected the wife’s income and that he had no information that the wife owned more than the 10% interest stated in the partnership agreement. The firm’s managing partner and the wife likewise testified that the tax returns were erroneous, that the wife owned a 10% interest in the firm, and that the percentages shown on the tax forms reflected the firm’s calculation of the wife’s percentage of income based upon the hours worked by the firm’s principals, rather than the percentage of her ownership. The record thus fully supports Supreme Court’s determinations that the wife owned a 10% interest in the firm and that the contrary opinion of the husband’s expert was based upon accounting errors in the tax returns (see Nissen v Nissen, 17 AD3d 819, 821 [2005]; Hiatt v Tremper-Hiatt, 6 AD3d at 1015).
 

 Next, the husband challenges the requirement that his visitation must be supervised, while the wife and the attorney for the children contend that the requirement is necessary and appropriate based upon the husband’s damaging behavior.
 
 [5]
 
 Although “[t]he best interests of the children generally lie with a healthy, meaningful relationship with both parents . . . , [supervised parenting time may be justified where unsupervised time with the children could be detrimental to the child[ren]’s safety as a result of the parent’s inability or unwillingness to discharge his or her parental responsibility properly” (Matter of Adam E. v Heather F., 151 AD3d 1212, 1214-1215 [2017] [internal quotation marks and citations omitted]). Here, the requirement for supervision is supported by a sound and substantial basis in the record consisting of the wife’s testimony, credited by Supreme Court, that the husband was belligerent and verbally abusive toward the wife and children, that he was subject to frequent angry outbursts that negatively affected both children’s emotional health, and that the children were present during several incidents in which he was physically abusive to the wife. The record also supports the court’s conclusions that the husband denied and minimized his behavior and that his failure to accept any responsibility for the deterioration of his relationship with the children made it likely that he would continue to engage in damaging conduct in the future (see Jared CC. v Marcie DD., 138 AD3d 1168, 1170 [2016]; Matter of Simpson v Simrell, 296 AD2d 621, 621-622 [2002]). Thus, the supervision requirement will not be disturbed.
 

 We agree with the husband that too much authority is delegated to the wife and children by the provision that awards supervised visits to the husband “until such time as the children, with the approval of [the wife], drop [the supervision] requirement.” Parties may properly be allowed to determine such peripheral matters as the choice of a supervisor, but the court’s authority on the central question of whether visits must be supervised “can no more be delegated to one of the parties than it can be to a child or to a therapist” (Matter of Taylor v Fry, 63 AD3d 1217, 1219 [2009] [internal quotation marks and citation omitted]; see Matter of Nicolette I. [Leslie I.], 110 AD3d 1250, 1255 [2013]; Matter of Taylor v Jackson, 95 AD3d 1604, 1605 [2012]). Any future determination as to whether supervision is required should be made by a court, upon the husband’s request for modification based upon a change in circumstances.
 

 We disagree, however, with the husband’s claim that the matter must be remanded to adjust the visitation schedule. Although the language of the visitation provision could be more precise, we agree with the attorney for the child and the wife’s counsel that its intent is to preserve the schedule previously followed by the parties, in which the husband was entitled to one supervised visit each week on Sunday evening at a public restaurant, while adding appropriate flexibility by permitting the parties to agree upon additional visits if they so choose. The provision accordingly satisfies Supreme Court’s obligation “to structure a schedule which results in frequent and regular access by the noncustodial parent” (Matter of William BB. v Susan DD., 31 AD3d 907, 908 [2006] [internal quotation marks and citations omitted]).
 

 Supreme Court did not err in directing the husband to pay counsel fees to the wife. The wife’s lower income made her the less-monied spouse and gave rise to the statutory rebuttable presumption that she was entitled to counsel fees (see Domestic Relations Law § 237 [a]; Macaluso v Macaluso, 145 AD3d 1295, 1297 [2016]), and the husband did not rebut the presumption. Contrary to his contention, the equitable distribution award did not alter the wife’s status as the less-monied spouse; the award equally divided the parties’ assets and, in any event, had no direct effect on either party’s income, as the court ordered payment to be made by qualified domestic relations orders from the husband’s retirement accounts. The record supports the wife’s contention that the litigation was unnecessarily prolonged by the husband’s dilatory tactics. As for the determination of the amount of the award based upon the wife’s preliminary estimate of her counsel fees, the court conditioned the award upon her timely subsequent submission of documents detailing the basis for her estimate. The ensuing submission from the wife’s counsel fully itemized the hours expended, counsel’s hourly rate, and the services provided in connection with the divorce action, including several motions to compel the husband to comply with discovery demands, ultimately setting forth a total expenditure significantly larger than the counsel fee award. Notably, the husband did not request a hearing. We thus find no abuse of discretion (see Fermon v Fermon, 135 AD3d 1045, 1048-1049 [2016]; Xiaokang Xu v Xiaoling Shirley He, 77 AD3d 1083, 1085-1086 [2010]; Yarinsky v Yarinsky, 25 AD3d 1042, 1042-1043 [2006]).
 

 Devine, Mulvey, Aarons and Rumsey, JJ., concur.
 

 Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as authorized the children, with plaintiff’s approval, to discontinue the requirement for supervision of defendant’s visits with the children, and, as so modified, affirmed.
 

 [1]
 

 . Notably, the record does not reveal that either of the parties’ experts established a value for the husband’s enhanced earning capacity resulting from his law license. The respective reports do not include such valuations, and neither expert testified that such a determination was either requested or made.
 

 [2]
 

 . The husband identified the document as his 2013 individual tax return during his testimony upon direct examination by the wife’s counsel, and it was admitted into evidence as one of her exhibits.
 

 [3]
 

 . We note that the amount of income shown on the W-2 form is consistent with the husband’s testimony as to the amount of his 2014 base pay, his testimony that he also received a bonus in that year that was reported on his personal tax return, and a hiring document in evidence that stated the amount of the annual bonus available to him.
 

 [4]
 

 . This error was revealed as the figures stated for the end of 2011 did not correspond with those for the beginning of 2012, as they would have if based upon the wife’s ownership percentage.
 

 [5]
 

 . Although the younger child is still a minor, visitation issues are moot as to the older child, who reached the age of 18 while this appeal was pending (see Robert B. v Linda B., 119 AD3d 1006, 1006 n 1 [2014], lv denied 24 NY3d 906 [2014]).