DeSouza v DeSouza (2018 NY Slip Op 05237)





DeSouza v DeSouza


2018 NY Slip Op 05237


Decided on July 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 12, 2018

524535

[*1]JENNIFER A. DeSOUZA, Respondent,
v
IAN S. DeSOUZA, Appellant.

Calendar Date: May 31, 2018

Before: Garry, P.J., Egan Jr., Mulvey, Aarons and Rumsey, JJ.


Robert F. Julien, PC, Utica (Robert F. Julien of counsel), for appellant.
Levene Gouldin & Thompson, LLP, Vestal (Elizabeth A. Sopinski of counsel), for respondent.
Palmer J. Pelella, Owego, attorney for the children.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from a judgment of the Supreme Court (Tait, J.), entered December 19, 2016 in Broome County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 2003 and are the parents of three children (born in 2006, 2008 and 2009). The wife moved out of the marital residence in June 2012 and, in November 2012, commenced the instant action for divorce. Supreme Court thereafter issued two temporary orders in February 2013 and July 2013, setting forth, among other things, the parties' obligations with respect to their marital property, child support and parenting time. The parties thereafter stipulated to various issues, including the ground for divorce (see Domestic Relations Law § 170 [7]); however, no resolution was reached with regard to equitable distribution, child support or parenting time. Following a nonjury trial, Supreme Court issued a 63-page decision and order, wherein the court, among other things, equitably distributed the parties' marital property, directed the husband to pay $2,562 per month in child support and awarded the parties' joint legal and physical custody of the children, with the primary physical residence with the wife and the husband to exercise custody during those three-week intervals of time that he is not working abroad, with the parties sharing alternating holidays [*2]and summer vacation [FN1]. In December 2016, a judgment of divorce was entered, incorporating but not merging Supreme Court's prior orders. The husband now appeals.
Initially, the husband contends that Supreme Court erred in calculating his monthly child support award of $2,562, by failing to consider the rental income that the wife derived from the five rental properties that she managed pursuant to Supreme Court's July 2013 temporary order. In order to determine a party's income for child support purposes, the court must consider, among other things, an individual's gross total income as reported in the most recent federal income tax return (see Domestic Relations Law § 240 [1-b] [b] [5] [i]; Fuchs v Fuchs, 276 AD2d 868, 872 [2000]; see also Matter of Yarinsky v Yarinsky, 36 AD3d 1135, 1137 [2007]), as well as additional income from sources other than employment (see Domestic Relations Law § 240 [1-b] [b] [5] [iv]; Spilman-Conklin v Conklin, 11 AD3d 798, 799 [2004]). Although the statute does not prohibit Supreme Court's reliance upon partial information from a tax year that is not yet completed (see Winnert-Marzinek v Winnert, 291 AD2d 921, 921-922 [2002]) where the provided documentation provides a more accurate reflection of a party's actual income (see Armstrong v Armstrong, 72 AD3d 1409, 1413-1414 [2010]), Supreme Court is also "not constrained by the financial accounts given by the parties or their experts" (Moffre v Moffre, 29 AD3d 1149, 1150 [2006]).
The most recent tax return available at the time of trial was the parties' 2012 income tax return, which indicated that the rental properties owned by the parties operated at a net loss for that year. There is nothing in the record to indicate, and the husband has failed to sufficiently demonstrate, that the loss calculated on the subject tax return was inaccurate or otherwise failed to represent the typical earnings or losses with respect to the rental properties [FN2]. Where, as here, a net loss is sustained on rental property for a given year, such rental income is properly excluded from the calculation of the parties' total gross income for child support purposes (see Domestic Relations Law § 240 [1-b] [b] [5] [ii]; Matter of Kristy Helen T. v Richard F.G., 24 AD3d 788, 790 [2005]; Knapp v Levy, 245 AD2d 1027, 1027 [1997], lv denied 91 NY2d 813 [1998]). Further, although the husband submitted documentation indicating that the five properties that the wife was managing pursuant to Supreme Court's temporary order earned profits of approximately $45,070 in 2013, the wife explicitly testified that the husband's calculations in this regard failed to include all the relevant expenses and property taxes that she paid in 2013. Supreme Court was not obligated to rely on the husband's documentary evidence in lieu of the parties' most recent tax return, and, to the extent that Supreme Court found the husband's proof to be too speculative in nature (see McAuliffe v McAuliffe, 70 AD3d 1129, 1133 [2010]), we discern no abuse of discretion in the court's exclusion of the 2013 rental income for purposes of fashioning the final child support award. We similarly find no abuse of discretion by the court in declining to award the husband certain additional credits against his child support payments (see Arthur v Arthur, 148 AD3d 1254, 1257 [2017]; McKay v Groesbeck, 117 AD3d 810, 811 [*3][2014]).
Next, we are unpersuaded that Supreme Court erred in fashioning a parenting time schedule. The primary concern in any child custody determination is the best interests of the children (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Moor v Moor, 75 AD3d 675, 676-677 [2010]), and Supreme Court "has broad discretion in fashioning an appropriate parenting schedule in this regard" (Funaro v Funaro, 141 AD3d 893, 896 [2016]; see Musacchio v Musacchio, 107 AD3d 1326, 1328 [2013]). Notably, great deference is accorded Supreme Court's factual findings, and its custody determination will not be disturbed so long as it is supported by a sound and substantial basis in the record (see Moor v Moor, 75 AD3d at 676-677).
The husband and the wife are unquestionably loving, caring and capable parents, and the children are well cared for in the respective household of each parent. The two older children attend school, the youngest child is in day care and all three participate in a number of appropriate extracurricular activities, including Irish dancing, competitive swimming, gymnastics and ballet. Further, the parents both realize the importance of and are willing to foster a relationship between the children and the other parent. In recognition thereof, Supreme Court's July 2013 temporary order provided each parent with essentially equal parenting time with the children [FN3]. Contrary to the husband's assertion, however, the testimony at trial established that, in practice, the parents' exercise of custody pursuant to said order was often inconvenient and subject to a lack of predictability. The wife testified that the husband regularly made adjustments to his international travel plans without providing sufficient prior notice, and he failed to provide her with a written schedule of his monthly travel plans until nearly nine months after the temporary order had gone into effect. As the husband often resided at different properties during the course of his three-week stays in the country, there were also issues regarding the wife's exercise of her twice a week visitation during same. Although the temporary order may have provided for equal custody on paper, the lack of consistency and predictability in application of the order often resulted in verbal confrontations — sometimes in front of the children — during custody exchanges.
Accordingly, Supreme Court's final parenting time schedule specifically addressed these concerns and provided that, while the husband is abroad, the children were to primarily reside with the wife and that, when the husband was in the country, he was free to take custody of the children during his approximately three-week travel cycles, with the wife getting one weekday overnight visitation and the parties sharing alternating weekends. Supreme Court also required the husband to provide the wife with an annual schedule of the dates and times that he would be in the "Greater Binghamton area" so that the children would know, in advance, which parent they would be staying with, when and for how long. Although Supreme Court's ultimate custody arrangement may not provide for the equal parenting time that, under ideal circumstances, might [*4]otherwise be appropriate, it sufficiently addresses the unique circumstances presented by the husband's international employment and balances the need for stability for the children while still providing for frequent and regular access by both parents (see Kimberly C. v Christopher C., 155 AD3d 1329, 1336 [2017]; Funaro v Funaro, 141 AD3d at 896). Simply put, it is a function of the husband's chosen employment that ultimately limits his ability to spend time with his children, not the terms of the parenting time award fashioned by Supreme Court [FN4]. Accordingly, on the record before us, we find that Supreme Court's parenting time determination is supported by a sound and substantial basis in the record (see Nolan v Nolan, 104 AD3d 1102, 1106 [2013]) and we decline to modify same.[FN5]
Next, we find the husband's challenge to Supreme Court's distribution of the parties' marital assets to be unavailing. Particularly, the husband contends that Supreme Court erred in awarding the wife half of his 75% ownership interest in Halifax Fan as the purchase of same was funded almost exclusively from separate property derived from monetary gifts from his father. We disagree. In fashioning an equitable distribution award, Supreme Court has substantial discretion in determining the fair and equitable distribution of marital property under the circumstances, and its award will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors (see Domestic Relations Law § [B] [1] [c]; [5] [d]; Fields v Fields, 15 NY3d 158, 170 [2010]; Gordon-Medley v Medley, 160 AD3d 1146, 1148 [2018]). Notably, equitable distribution does not necessarily require equal distribution (see Smith v Smith, 152 AD3d 847, 848 [2017]), and Supreme Court's credibility determinations with respect to same are to be accorded great weight and are entitled to deference (see Lurie v Lurie, 94 AD3d 1376, 1378 [2012]).
The husband initially purchased a 15% interest in Halifax Fan in 2005 with subsequent purchases of shares being made in 2006 and 2012, culminating in the husband garnering a 75% [*5]ownership interest in the business as of July 2012. There is no dispute that the husband's entire 75% ownership stake in Halifax Fan was purchased during the course of the parties' marriage and, therefore, it is presumptively marital property (see Wallace v Wallace, 154 AD3d 1078, 1079 [2017]; Mula v Mula, 131 AD3d 1296, 1299 [2015]). Following the husband's purchase of the initial 15% minority interest in Halifax Fan in 2005, he thereafter took a position with Alstom, a French-owned manufacturing company, earning a salary of approximately $700,000 per year. The wife, meanwhile, had given up her employment in July 2010 in order to care for the parties' children [FN6]. While the wife may not have been directly involved in the acquisition or the subsequent management of Halifax Fan, she testified that she had extensive discussions with the husband regarding the purchase of same, both prior to the husband's initial investment in Halifax Fan and as he was contemplating leaving his employment with Alstom and purchasing a majority ownership stake in the company. The wife testified that she was concerned about maintaining the parties' marital standard of living should the husband leave his corporate employment to pursue a more entrepreneurial path with Halifax Fan, which at that time only guaranteed him an annual salary of approximately $150,000. She avers that, in light of her concerns, the husband provided her with various revenue projections and reassured her on numerous occasions that the acquisition of Halifax Fan would ultimately be a lucrative long-term investment, it would not change their standard of living and would concomitantly provide him the opportunity to leave his corporate job and the flexibility to spend more time with family. The wife averred that she ultimately acquiesced to the purchase as it was a good investment both financially and otherwise for the family.
Notably, Supreme Court did not disagree with the husband that his ownership stake in Halifax Fan was purchased almost exclusively with separate property. Supreme Court recognized, however, that "[t]here is no single template that directs how courts are to distribute a marital asset that was acquired, in part or in whole, with separate property funds" (Fields v Fields, 15 NY3d at 167; accord Murray v Murray, 101 AD3d 1320, 1321 [2012], lv dismissed 20 NY3d 1085 [2013]). The court then determined, that, as a marital asset, the wife was entitled to a 50% interest in the husband's ownership stake in Halifax Fan and appropriately provided the husband with a separate property credit of £208,000 for the value of former separate property (see Robinson v Robinson, 133 AD3d 1185, 1189-1190 [2015]; Beardslee v Beardslee, 124 AD3d 969, 969 [2015]; Lurie v Lurie, 94 AD3d at 1378). Given the joint nature of the parties' decision to invest in Halifax Fan and the extent of the wife's nonmonetary contributions in caring for the children during such time, under the circumstances, we find that the husband failed to carry his burden of establishing that his ownership interest in Halifax Fan constituted separate property and, therefore, we cannot say that Supreme Court's award of half of his 75% ownership interest in same constituted an abuse of discretion (see Fields v Fields, 15 NY3d at 167; see also Wegman v Wegman, 123 AD2d 220, 230 [1986]). Nor do we find that the husband established his entitlement to an increased separate property credit to reflect the appreciated value of the husband's initial investment in Halifax Fan (see Johnson v Chapin, 12 NY3d 461, 466-467 [2009]; compare Vantine v Vantine, 125 AD3d 1259, 1260-1261 [2015]).
Lastly, with respect to the husband's Universal Instruments 401(k) and tax-deferred profit plan and stock option proceeds, we find that the husband failed to demonstrate his [*6]entitlement to a separate property credit. The husband was unable to establish the value of the 401(k) as of the date of marriage and the proceeds of the tax-deferred profit plan and stock options were ultimately commingled with marital property and the husband failed to overcome the presumption that these funds therefore constituted marital property (see Macaluso v Macaluso, 124 AD3d 959, 960 [2015]; Cassara v Cassara, 1 AD3d 817, 820 [2003]; see also Maddaloni v Maddaloni, 142 AD3d 646, 652 [2016]). Accordingly, based on the foregoing, and giving deference to Supreme Court's credibility determinations, we find that the court properly considered the relevant statutory factors required of a decision awarding equitable distribution (see Domestic Relations Law § 236 [B] [5] [d]) and, therefore, decline to disturb it. The husband's remaining contentions, to the extent not specifically addressed, have been considered and found to be without merit.
Garry, P.J., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that judgment is affirmed, without costs.



Footnotes

Footnote 1:The husband subsequently moved to set aside all or part of Supreme Court's order, which motion Supreme Court partially granted to the extent of awarding the husband the amount to which he was entitled from the wife's 401(k) as an offset against her interest in one of his 401(k)s, and otherwise denied the motion.

Footnote 2:The tax return included all eight properties owned by the parties.

Footnote 3:When the temporary order was entered, the husband was a majority shareholder in and chief executive officer for Halifax Fan, a closely-held foreign corporation with business operations in the United Kingdom, China and Hong Kong. The temporary order, therefore, provided that the parents would exercise custody in alternating three-week increments in order to accommodate the international travel inherent to the husband's employment.

Footnote 4:Although the husband contends that he gave up corporate employment and the lucrative salary commensurate therewith in an effort to have more, not less, time with his children, the record is devoid of any indication that he ever explored other employment options in the "Greater Binghamton area" that would have provided a salary commensurate with his family's established standard of living that might have otherwise provided the corresponding work-life balance that he purportedly desired.

Footnote 5:Although Supreme Court did not reference in its decision whether it had inquired of the attorney for the children with respect to the children's preference, we note that there is no requirement for the court to specifically reference same (see Porcello v Porcello, 80 AD3d 1131, 1134 [2011]). Moreover, we note that the attorney for the children actively participated in the trial, cross-examined both parents and, following trial, submitted a posttrial summation letter wherein he argued that, based upon, among other things, the husband's frequent international travel, the children's best interests were served by providing them with a consistent routine that more closely resembled the wife's proposed parenting time schedule.

Footnote 6:The wife had been employed by Endicott Interconnect as vice-president of supply chain in Asia operations from 2007 to 2010.