Matter of Aree RR. v John SS. (2019 NY Slip Op 07818)





Matter of Aree RR. v John SS.


2019 NY Slip Op 07818


Decided on October 31, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 31, 2019

527108

[*1]In the Matter of Aree RR., Appellant,
v
John SS., Respondent.

Calendar Date: September 10, 2019

Before: Garry, P.J., Clark, Mulvey, Devine and Pritzker, JJ.


Christopher A. Burns, Kingston, for appellant.
George W. Redder, Kingston, for respondent.
Betty J. Potenza, Highland, attorney for the child.



Mulvey, J.
Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered February 27, 2018, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2008). In October 2014, Family Court entered an order on consent granting the parents joint legal custody of the child with the father having primary physical custody. The order awarded the mother monitored visitation with the child on Sundays between 11:00 a.m. and 3:00 p.m., and supervised visitation at other times as agreed upon between the parties. The order also required the mother to notify the father if she is hospitalized or has a psychiatric episode related to her bipolar disorder, and to sign releases to allow her service providers to inform the father if she is hospitalized or has a psychiatric episode, as well as update him as to whether she is complying with her medication regimen.
In July 2015, the mother filed a petition seeking unsupervised visitation on alternating weekends. Following a lengthy hearing, Family Court partially granted the petition by expanding the mother's visitation to Sundays between 10:00 a.m. and 7:00 p.m., Wednesdays from after school until 7:00 p.m., and three days each week in the summer from 10:00 a.m. until 7:00 p.m., with the father being able to monitor the visitation by calling the child during visits. The court required the mother to sign releases to permit the father to talk to her treatment providers about her compliance with prescribed medications and attendance at treatment only, required the mother and her boyfriend to advise the father of any medical or mental health issues affecting the mother, and permitted the father to determine whether it is appropriate for the child to have visits with the mother if she is hospitalized or decompensating or having issues with her bipolar disorder, and whether any contact immediately thereafter should be supervised. The mother appeals.
Family Court's determination that the mother should not have overnight visits is supported by a sound and substantial basis in the record. Because the prior order provided that, as long as she waited at least six months, the mother could seek a modification without showing a change in circumstances, "our inquiry turns to a best interests analysis" (Matter of Andrea CC. v Eric DD., 132 AD3d 1028, 1029 [2015]). Given Family Court's superior ability to observe the witnesses' testimony and demeanor, we defer to its factual findings and credibility assessments, and we will not disturb the resulting custody determination if it is supported by sound and substantial evidence (see Matter of Paluba v Paluba, 152 AD3d 887, 889 [2017]; Matter of Spoor v Carney, 149 AD3d 1209, 1210 [2017]). Similarly, the extent of parenting time and whether it should be supervised are matters left to Family Court's sound discretion, as long as the record supports those determinations (see Matter of Spoor v Carney, 149 AD3d at 1210).
Several of the mother's treatment providers testified that she had been compliant with therapy and medication and stable for three years. The mother and her boyfriend testified regarding her stability and the father's interference with her parenting time. The father testified regarding instances that raised concern about the mother's stability, such as a recent incident when the mother forced the clothed child into a bathtub. The father also countered that he had not interfered with the mother's time; rather, she had refused to allow him to talk to the child during visits, despite the monitoring requirement in the prior order. The mother admitted that, contrary to the prior court order, she had revoked releases permitting her treatment providers to disclose certain information to the father and had not informed him when she changed providers. A psychologist, who conducted forensic evaluations of the parties and child in 2010 and 2014, testified regarding those evaluations and explained that, even if the mother is now psychiatrically stable, that does not mean that she necessarily would be a fit parent or be attuned to the child's needs. Although the mother complains that those evaluations were old, she refused to participate in an updated evaluation, thereby creating the limitations on the psychologist's ability to provide a current assessment. Family Court was free to consider this refusal in rendering a determination. The court also conducted a Lincoln interview with the child, whose attorney argued against overnight visits. Considering the conflicting testimony, the record contains a sound and substantial basis to support the court's determination to provide the mother with expanded unsupervised time with the child, while denying overnight visits (compare Matter of Jason HH. v Kylee II., 162 AD3d 1144, 1146 [2018]; Matter of Westfall v Westfall, 28 AD3d 1229, 1230 [2006], lv denied 7 NY3d 706 [2006]).[FN1]
Nevertheless, Family Court erred in delegating authority to the father to determine whether visitation would take place under certain circumstances. The court's authority to set visitation cannot be delegated to a party (see Kimberly C. v Christopher C., 155 AD3d 1329, 1335 [2017]; Matter of William BB. v Susan DD., 31 AD3d 907, 908 [2006]). We agree that the father can choose to temporarily suspend visitation while the mother is hospitalized for a mental health condition. However, Family Court went too far in giving the father — who is not a doctor or otherwise trained in recognizing and treating mental health conditions — that same authority in the vague situations where the mother is "decompensating or otherwise having an issue with her bipolar condition," or permitting him to require supervision of visitation in the aftermath of those situations without further court intervention. We have no doubt that if the father believes or is informed that the mother is unstable, he will seek court permission to withhold or limit visits to protect the child (see Kimberly C. v Christopher C., 155 AD3d at 1335). The court also erred in directing the mother's boyfriend — a nonparty, over whom the court had not obtained jurisdiction — to advise the father of any medical or mental issues that the mother may experience "as they are occurring or as soon as practicable thereafter" (see Matter of James A., 50 AD3d 787, 787-788 [2008]). Accordingly, we remove that direction.
Garry, P.J., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) authorized respondent to prevent visits when petitioner is "decompensating or otherwise having an issue with her bipolar condition" or to require supervision thereafter without court intervention, and (2) directed petitioner's boyfriend to advise respondent of petitioner's medical or mental issues, and, as so modified, affirmed.



Footnotes

Footnote 1: We note our concern over the inordinate amount of time that has elapsed since the commencement of this proceeding in July 2015. The hearing was conducted piecemeal on 11 separate days, beginning in December 2015 and ending in February 2017. Family Court's decision was signed in January 2018 and the order on appeal was entered in February 2018. It is unsettling that this petition was filed more than four years ago, during which time the child has grown from age 7 to age 11. Although we are not modifying the schedule and conditions of visitation imposed by Family Court based on the record before us, we recognize that circumstances may have changed since this proceeding was commenced.